Entered on Docket February 17, 2017

**Below is a Memorandum Decision of the Court.**

_____
**Christopher M. Alston
U.S. Bankruptcy Judge
(Dated as of Entered on Docket date above)**

_____

Christopher M. Alston
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>Jocelyn D. Williams,<br><br>                Debtor. | Case No. 16-10625-CMA |
| Jocelyn Williams,<br><br>                Plaintiff,<br>v.<br><br>National Collegiate Student Loan Trust 2004-1; National Collegiate Student Loan Trust 2006-1; National Collegiate Student Loan Trust 2007-2; National Collegiate Student Loan Trust 2005-1,<br><br>                Defendants. | Adversary Case No. 16-01114-CMA<br><br>MEMORANDUM DECISION |

THIS MATTER came on regularly for trial on January 24, 2017, before the Court. The Court considered the documents admitted into evidence, the testimony of witnesses, and argument of counsel, and took the matter under advisement.

MEMORANDUM DECISION - 1

FINDINGS OF FACT

Based upon the foregoing, the Court makes the following findings of fact:

1. Between 2004 and 2007, Plaintiff Jocelyn Williams ("Ms. Williams") pursued secondary education at Metropolitan State College of Denver, in Denver, Colorado and the University of Phoenix, online. During that period, she entered into five private student loans for her own education. In 2005, she also co-signed on a student loan for her sister, who attended Prairie View A&M University in Prairie View, Texas.

2. The lenders paid the loan proceeds either to Ms. Williams or directly to the respective school. The Defendants, hereinafter collectively referred to as the "Trust Entities," now own all of the loans.

3. Between 2009 and 2011, Ms. Williams lived in Denver, Colorado and in Texas. While living in Denver, she held a full-time job that paid her $12 per hour. While living in Texas she held a full-time job that paid her $14 per hour. Ms. Williams moved to Washington in 2011. Even though she actively sought work, she had difficulty finding employment. Since 2014, she has worked in school districts in Kitsap County. Ms. Williams' net earnings for 2016 averaged less than $1,500.00 per month. Ms. Williams works as a substitute teacher and aide for the Central Kitsap School District and Bremerton School District, earning up to $17.66 per hour, without benefits. She perhaps could earn more money if she obtained a teaching certificate, but she does not have the financial resources to pursue one without borrowing, which she is justifiably reluctant to do. In the summer of 2016, she worked at a foot and ankle clinic and earned $1,350 over the course of the entire summer. Ms. Williams receives $194.00 per month in food assistance from the State of Washington.

4. Ms. Williams defaulted on all six loans. There is no evidence that she ever made

any payments on any of the six loans or that she attempted to negotiate a payment plan. In 2012, the Trust Entities sued Ms. Williams in Kitsap County Superior Court on each of the defaulted loans, with the exception of the co-signed loan, and the Trust Entities obtained judgments against her in March 2014. The judgments accrue interest at 12% per annum. The combined amounts of principal, fees, and accrued interest on the judgments and co-signed loan exceed $250,000.00. The annual interest that accrues exceeds $30,000.00. On at least one of the judgments, the Trust Entities issued writs of garnishment to Ms. Williams' banks and to one her employers. The Trust Entities recovered $42 from these efforts.

    5.    Ms. Williams cannot seek or accept full-time employment due to her chronic and progressive health problems. Ms. Williams suffers from type 2 diabetes with associated diabetic neuropathy, carpal tunnel syndrome, osteoarthritis in both knees, joint pain, high blood pressure, progressive retinal neuropathy, anxiety, and depression. Many of her health problems are chronic and progressive in nature. Her medication for arthritis only slows down the progress of the disease. There are some days that her health issues restrict her ability to leave her home. Ms. Williams' currently receives her health care at no charge through Apple Health, Washington's Medicaid program. She is 44 years old.

    6.    In addition to the loans at issue in this proceeding, Ms. Williams had two federal student loans. Her federal student loans are in good standing under the Income-Based Repayment program. Based on her income, her loan payments under these programs are $0.00. The Trust Entities do not offer income-driven payment options.

    7.    Ms. Williams lives with several other adults in a rented house. She does not own any real estate or a vehicle. She drives a 1999 Ford Escort owned by her sister. She has no retirement savings or personal savings. The expenditures on her personal budget are minimal.

8.  Ms. Williams does pay approximately $54 a month for training at a gym. She testified that the training constitutes physical therapy that she needs to maintain mobility in her arms and legs. Given her medical conditions, such therapy is necessary and the amount spent each month is reasonable.

9.  Ms. Williams filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 9, 2016. She has no dependents. She received a discharge on June 15, 2016.

## CONCLUSIONS OF LAW

Based on the above findings of fact, the Court makes the following conclusions of law:

1.  This Court has jurisdiction pursuant to 28 U.S.C. §1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2)(I) as it involves the dischargeability of a debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8). The Court has the authority to enter final orders and judgments in this proceeding. To the extent the Court does not have authority to issue a final order absent the consent of the parties in accordance with *Stern v. Marshall*, 564 U.S. 462 (2011), the parties to this proceeding have provided their knowing and voluntary consent to this Court entering final orders and judgments. *See Wellness International Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

2.  Educational loans are not subject to discharge unless excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). The purpose of the loans now owned by the Trust Entities was to facilitate the education of Ms. Williams and her sister. These loans therefore fall within the meaning of section 523(a)(8).

3.  In order to include these educational loans within her discharge, Ms. Williams must demonstrate that the loans would impose an "undue hardship," a term that Congress did not

MEMORANDUM DECISION - 4

define in the Bankruptcy Code. The Second Circuit established a three-part test for a discharge of a student loan obligation. This test requires the debtor to show (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans, (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) that she has made good faith efforts to repay the loans. *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987). The Ninth Circuit has adopted the three-part *Brunner* test. *United Student Aid Funds v. Pena* (*In re Pena*), 155 F.3d 1108, 1112 (9th Cir. 1998). The debtor has the burden of proving all three elements before discharge can be granted. *Id*. at 1111. The standard of proof is the preponderance of the evidence standard. *In re Roth*, 490 B.R. 908, 916-17 (B.A.P. 9th Cir. 2013).

4. Ms. Williams is currently maximizing her income by working as many days as she can and by seeking the highest paying type of temporary work available in her local school districts (as a substitute teacher). Ms. Williams is limited in the ability to earn income by her health problems and by her lack of a teaching certificate that would allow her to use her classroom skills, should her health enable her to accept a teaching position and if she had the financial resources to pursue a certificate. The fact that she currently qualifies for food stamps and free health care confirms that her income is insufficient to provide for her basic needs. Her current monthly expenses total $1,700, which exceed her income by about $100. She lives with several other adults in a rented house and pays $700 per month in rent and another $50 per month for renters insurance. She spends $224 a month on car insurance and gas. The $54 per month expense on training at a gym is reasonable and necessary for Ms. Williams' physical and mental health. These and her other monthly expenditures are minimal and reasonable. Based on

MEMORANDUM DECISION - 5

her average net income and her reasonable living expenses, Ms. Williams cannot maintain a "minimal" standard of living for herself if required to pay the Trust Entities loans. She has proven the first prong of the *Brunner* test.

5. It is almost certain that Ms. Williams' financial situation will not improve over the next 20 years. Ms. Williams' progressive health problems are likely to diminish her ability to work and thus lead to a reduction in earned income. There are therefore additional circumstances indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. Ms. Williams has proven the second prong of the *Brunner* test.

6. With respect to the third prong of the *Brunner* test, good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses. *In re Mason*, 464 F.3d 878, 884 (9th Cir. 2006). Courts will also consider a debtor's effort—or lack thereof—to negotiate a repayment plan, although a history of making or not making payments is, by itself, not dispositive. *Id.* Courts also examine the following factors: (1) whether the debtor has made any payments on the loan prior to filing for discharge, although a history of making or not making payments is, by itself, not dispositive; (2) whether the debtor has sought deferments or forbearances; (3) the timing of the debtor's attempt to have the loan discharged; and (4) whether the debtor's financial condition resulted from factors beyond her reasonable control, as a debtor may not willfully or negligently cause her own default. *Roth*, 490 B.R. at 917 (citations omitted).

7. At first blush, it would appear that several of these factors weigh against Ms. Williams on the issue of good faith. There is no evidence that she attempted to negotiate a repayment plan or that she sought a deferment or forbearance. She also never made any

MEMORANDUM DECISION - 6

voluntary payments on the loans in the years before she filed bankruptcy. Nonetheless, the totality of the circumstances leads to the conclusion that Ms. Williams made a good faith effort to deal with her student loans.

*First*, the evidence shows that her medical conditions limit her employment opportunities, that she has obtained employment within those limitations, and that she maximized her income and minimized her expenses. While the parties did not provide evidence of Ms. Williams' expenses when she was living in Colorado and Texas, it is unrefuted that she earned no more than $14 per hour, which amounts to a gross annual salary of only $28,000. She further testified that she never made enough money to make payments on these loans; that testimony was unrefuted and is credible given her stated income since 2009.

*Second*, while there is no evidence that she attempted to negotiate or seek a deferment of the Trust Entities loans, she did enter into income-based repayment arrangements on her federal education loans to keep those loans in good standing. This fact shows that she was willing to enter into a repayment program if one was available for these loans.

*Third*, she did not file bankruptcy immediately after the educational loans became due or otherwise attempt to discharge the loans even after the Trust Entities obtained judgments against her. Unlike the debtor in *Brunner*, who sought to discharge her student loans within a month of the date the first payment became due, Ms. Williams waited for years before seeking bankruptcy protection.

*Fourth*, her inability to earn enough money to repay the loans was due to health problems and a challenging job market, factors that are beyond her control. It bears repeating that Ninth Circuit authority makes clear that failure to make any payments and failure to attempt to negotiate repayment are not dispositive of the good faith issue. *See, e.g.*, *Roth*, 490 B.R at 918

MEMORANDUM DECISION - 7

(holding that lack of even minimal voluntary payments is not lack of good faith if the debtor did not have the financial wherewithal to make them). Like the debtor in *Roth*, the record shows that due to Ms. Williams' limited income since 2009, any loan payment by her would have been extremely modest.

8. The Court concludes that excepting her private student loans from discharge would impose an undue hardship on Ms. Williams within the meaning of 11 U.S.C. § 523(a)(8).

## CONCLUSION

For the reasons set forth above, the Court concludes that the student loans owed by Plaintiff Jocelyn Williams to National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2005-1 that are identified in the Complaint would impose an undue hardship on Ms. Williams within the meaning of 11 U.S.C. § 523(a)(8), and accordingly, should be discharged in their entirety. The Court will enter a separate judgment, pursuant to Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58, consistent with this Memorandum Decision.

/// END OF MEMORANDUM DECISION ///